# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT COLUMBIA

| | |
|---|---|
| KRISTA DAWSON ) | |
| ) | Case No. 1:25-cv-00025 |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |

To: The Honorable William L. Campbell, Jr., Chief District Judge

## REPORT AND RECOMMENDATION

Plaintiff Krista Dawson filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying her disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 9) and memorandum in support (Docket No. 9-1), to which Defendant SSA has responded (Docket No. 11). This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 12.) Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 9) be **DENIED**.

## I. INTRODUCTION

On January 30, 2020, Plaintiff proactively filed an application for DIB. (Transcript of the Administrative Record (Docket No. 7) at 77).[1] In her application, Plaintiff asserted that, as of the alleged onset date of October 30, 2019, she was disabled and unable to work due to the following physical or mental conditions: bipolar disorder, depression, attention-deficit/hyperactivity disorder

---

[1] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

(ADHD), anxiety disorder, eating disorder, carpal tunnel, headaches, polycystic ovarian syndrome (PCOS), and asthma. (AR 238.)

These claims were denied initially on August 24, 2021 and upon reconsideration on November 10, 2021. (AR 108–11, 125–30.) On November 17, 2022, Plaintiff appeared with a representative and testified at a telephonic hearing conducted by Administrative Law Judge ("ALJ") Marty Turner. (AR 31–52.) On December 2, 2022, ALJ Turner denied the claim. (AR 17–25.) On April 26, 2023, the Appeals Council denied Plaintiff's request for review of ALJ Turner's decision, thereby making ALJ Turner's decision the final decision of the SSA. (AR 1–6.) Plaintiff then timely commenced a civil action in this Court. *See Dawson v. Comm. of Soc. Sec.*, Case No. 1:23-cv-00040 (M.D. Tenn.) [hereinafter *Dawson I*]. The SSA filed an unopposed motion asking the Court to enter a judgment that reversed the SSA's decision and remanded the case back to the SSA for further action. (AR 1858). The Court granted the motion and remanded the case to the SSA on August 24, 2023. (AR 1858).

On December 13, 2023, the Appeals Council vacated its prior decisions and remanded the case to an ALJ for resolution of certain issues. (AR 1860–65.) On May 1, 2024, Plaintiff appeared with attorney Carl Groves and testified at an in-person hearing conducted by ALJ Turner. (AR 1827–50.) On May 17, 2024, ALJ Turner denied the claim. (AR 1805–19.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

In his May 17, 2024 unfavorable decision, the ALJ included the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2023.

2

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 30, 2019, through her date last insured of June 30, 2023 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: depression/bipolar disorder, anxiety, ADHD, obesity, and right shoulder degenerative joint disease (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except frequently climb, balance, stoop, kneel, crouch and crawl; frequently push/pull, reach, handle and finger with the right upper extremity; have no exposure to workplace hazards such as unprotected heights and dangerous machinery; understand, remember and carry out simple work instructions; tolerate occasional changes in work settings; and occasional interactions with the general public, coworkers and supervisors.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on June 4, 1976, and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 30, 2019, the alleged onset date, through June 30, 2023, the date last insured (20 CFR 404.1520(g)).

(AR 1807–19.)

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSION AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, she is not disabled. *Id.*

4

Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, she is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, she is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on her residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), she is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on her RFC, age, education, and work experience, she is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

B.     **The ALJ's Five-Step Evaluation of Plaintiff**

Following the five-step sequential analysis, the ALJ determined that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between her alleged onset date and her date last insured, or from October 30, 2019 to June 30, 2023. (AR 1807.) At step two, the ALJ found that Plaintiff's impairments of "depression/bipolar

5

disorder, anxiety, ADHD, obesity, and right shoulder degenerative joint disease" were severe.[2] (AR 1807–08.) At step three, the ALJ determined that Plaintiff was not presumptively disabled because she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 1810–12.) At step four, the ALJ determined that Plaintiff had the RFC to perform medium work with certain exertional and non-exertional limitations. (AR 1813–17.) Finally, at step five, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured, such as auto detailer, laundry worker, presser, office helper, and hand packer. (AR 1818.)

Therefore, the ALJ concluded that Plaintiff was not under a disability at any time from October 31, 2019, her alleged onset date, through June 30, 2023, her date last insured. (AR 1819.)

C. **Plaintiff's Assertions of Error**

Plaintiff sets forth two assertions of error: (1) the ALJ erred when he failed to properly evaluate the evidence in assessing Plaintiff's RFC; and (2) the ALJ improperly evaluated Plaintiff's disabling symptoms. (Docket No. 9-1 at 10–17.) Accordingly, pursuant to sentence four of 42 U.S.C. § 405(g), Plaintiff asks the Court to either reverse the decision of the SSA and award her DIB, or remand the matter back to the SSA for further consideration. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

---

[2] The ALJ found that Plaintiff's asthma, polycystic ovarian syndrome (PCOS), headaches, and back impairment were non-severe impairments. (AR 1808–10)

### 1. The ALJ's Consideration of Plaintiff's RFC

With respect to her RFC, Plaintiff asserts that the ALJ erred because he failed to properly evaluate both the "medical opinion evidence" of Tyler Sanders, LMSW, and the "medical evidence of record" concerning her hallucinations. (Docket No. 9-1 at 10–16.)

When evaluating medical opinion evidence, the ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," but is instead directed to consider the "persuasiveness" of the medical opinions based on five categories, which include: (1) supportability, (2) consistency, (3) the provider's relationship with the claimant, (4) the provider's specialization, and (5) other factors such as familiarity with the disability program's policies. 20 C.F.R. § 404.1520c(a)-(c).

The first and second factors, supportability and consistency, are the "most important" in a "persuasiveness" analysis. *Id.* § 404.1520c(a). In assessing supportability, medical opinions and prior findings are "more persuasive" if the objective medical evidence and supporting explanations that are used to support those opinions or findings are "more relevant." *Id.* § 404.1520c(c)(1). In assessing consistency, medical opinions and prior findings are "more persuasive" if they are "more consistent" with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2). These two most important factors – supportability and consistency – must be explained, while the other three factors may be explained. *Id.* § 404.1520c(b)(2). To determine the persuasiveness of a particular medical opinion, a court must evaluate whether the ALJ properly considered the factors set forth in the regulations. *Toennies v. Comm'r of Soc. Sec.*, No. 1:19-CV-02261, 2020 WL 2841379, at *14 (N.D. Ohio June 1, 2020) (quoting *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958, 2019 WL 6468560, at *4 (D. Or. Dec. 2, 2019)).

7

The applicable SSA regulations "require that the ALJ provide a coherent explanation of his reasoning." *Lester v. Saul*, No. 5:20-cv-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 20-1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). The ALJ must provide a "minimum level of articulation" in his determinations and decisions to "provide sufficient rationale for a reviewing adjudicator or court." *Warren I v. Comm'r of Soc. Sec.*, No. 20-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01 (2017)). A failure to meet these "minimum levels" of articulation "frustrates" the court's ability to determine if the ALJ's decision was supported by substantial evidence. *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 906 (quoting *Vaughn v. Comm'r of Soc. Sec.*, No. 20-1119, 2021 WL 3056108, at *11 (W.D. Tenn. July 20, 2021)).

From October 2020 to December 2023, W. Tyler Sanders, LMSW, and his colleagues at Centerstone, a nonprofit health system, provided Plaintiff with therapy and counseling services. (AR 2009–2465.) Mr. Sanders's notes from their first encounter on October 7, 2020 list the following diagnoses for Plaintiff: bipolar 1 disorder; suicidal ideations; posttraumatic stress disorder; ADHD; and generalized anxiety disorder. (AR 2461.) Plaintiff saw Mr. Sanders one to two times per month through March 2021, and then once every month or two through December 2023. In other words, Plaintiff consistently saw Mr. Sanders.

On June 13, 2022, Mr. Sanders saw Plaintiff for an in-person therapy appointment. (AR 2294–95.) He noted that Plaintiff continued to exhibit depression and anxiety symptoms, was engaged during their session, exhibited crying spells, and explored feelings of low self-worth. (AR 2994.) That same day, Mr. Sanders completed a three-page form for Plaintiff titled, "Medical Statement Concerning Psychological Impairment(s) for Social Security Disability." (AR 1581–

8

83.) On the first page of the form, Mr. Sanders indicated by check mark that Plaintiff had the following "signs and symptoms": anhedonia or pervasive loss of interest in almost all activities; appetite disturbance with change in weight; sleep disturbance; decreased energy; feeling of guilt or worthlessness; difficulty concentrating or thinking; thoughts of suicide; hallucinations, delusions, or paranoid thinking; generalized persistent anxiety; apprehensive expectations; vigilance and scanning; and recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress. (AR 1581.) Mr. Sanders did not provide any information about Plaintiff's "general limitations caused by psychological condition." (AR 1582.) However, with respect to Plaintiff's "work limitations related to mental status," Mr. Sanders indicated as follows:

- For her ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances," Plaintiff was "markedly" impaired (seriously limited, but not precluded).

- For her ability to "maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness," Plaintiff was "moderately" impaired (limited, but able to function satisfactorily).

(AR 1582–83.) Mr. Sanders did not provide an opinion on Plaintiff's limitations for any of the other listed abilities related to mental status (i.e., her ability to carry out detailed instructions, make simple work-related decisions, or interact appropriately with the general public.) (AR 1582–83.) Instead, Mr. Sanders stated that he was "unable to answer." (AR 1582–83.) Mr. Sanders was also "unable to answer" if Plaintiff's impairments would cause her to be off task or to regularly miss work. (AR 1583.) However, he indicated that September 2020 was the earliest date that Plaintiff's impairments were at the severity he indicated. (AR 1583.)

In his decision finding that Plaintiff was not disabled, the ALJ assessed Mr. Sanders's June 13, 2022 opinion. (AR 1817.) The ALJ found Mr. Sanders's opinion that Plaintiff was "markedly" impaired in her ability to "perform activities within a schedule, maintain regular attendance, and

9

be punctual within customary tolerances" to be "not persuasive." The ALJ first addressed the consistency of the opinion. He found that other medical and opinion evidence showed that Plaintiff had a "moderate" rather than "marked" limitation in her ability to perform within a schedule, maintain attendance, and be punctual. Although the ALJ did not cite particular medical evidence that was inconsistent with Mr. Sanders's opinion, the ALJ discussed relevant medical evidence in other portions of his decision. For example, the ALJ noted that Plaintiff's Centerstone treatment records – where Mr. Sanders was one of Plaintiff's providers – showed that Plaintiff was "mostly compliant with medications and treatment with a few missed appointments and a gap in treatment towards the end of 2021 and then worsening compliance again at the end of 2022 through the date last insured." (AR 1813.) The ALJ also noted that many of the symptoms about which Plaintiff testified – including being unreliable and being late or not attending work – were "not evident in or supported by the record." (AR 1814.) The ALJ then pointed to medical evidence wherein Plaintiff herself stated that she was "reliable, dependable, and easy to get along with." (AR 1814.) In addition, the ALJ explicitly contrasted Mr. Sanders's opinion that Plaintiff had a "marked" limitation with the opinions of the state agency psychologists who found a "moderate" limitation. (AR 71, 96.)

      The ALJ then addressed the supportability of the opinion. The ALJ found that Mr. Sanders's opinion lacked explanation because Mr. Sanders failed to elucidate why he was able to find that Plaintiff had marked limitations in one area but was then unable to opine on most other areas. In other words, Mr. Sanders merely checked a box to indicate a "marked" limitation in Plaintiff's ability to perform within a schedule, maintain attendance, and be punctual, but he did not provide any discussion of why this limitation was appropriate. (AR 1817.) Importantly to the ALJ, Mr. Sanders did not provide "specific functional limitations supported by the medical records

10

or the other opinions of record over a 12-month period" to show why Plaintiff's limitation was "marked," or "severely limited, but not precluded." In short, the ALJ determined that Mr. Sanders's opinion did not reference any medical findings or treatment to support a "marked" limitation.

In her motion, Plaintiff argues that her medical records are more consistent with Dr. Sanders's "marked" limitation in her ability to perform within a schedule, maintain attendance, and be punctual. (Docket No. 9-1 at 12.) To support this position, Plaintiff cites records showing the following: she missed appointments, which caused her to fail to make progress in her emotional goals; her medication usage caused her to forget things; and she had auditory hallucinations, disrupted sleep, and a depressed mood. (*Id.*) Based on these medical records, Plaintiff contends that the ALJ improperly substituted his own opinion for that of a medical professional. (*Id.*)

Although Plaintiff points to medical record evidence that could support a more limited RFC, it is not this Court's job to determine if there is evidence in favor of Plaintiff's position that he is not able to perform medium work with the restrictions included by the ALJ. *See Garner*, 745 F.2d at 387 ("This Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility."). This Court is limited to determining whether substantial evidence supported the ALJ's RFC. That substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Blakley*, 581 F.3d at 406. Overall, the Court finds that the ALJ provides a sufficient explanation of the consistency of Mr. Sanders's opinion. It is clear that the ALJ found that other evidence in the record contradicted, or at least weakened, Mr. Sanders's opinion, which rendered the opinion unpersuasive to the ALJ.

11

Plaintiff also criticizes the ALJ's description of Mr. Sanders's opinion as a "checkbox form." (Docket No. 9-1 at 14.) Plaintiff contends that this description was improper because the ALJ did not provide explanation and did not "apply this same level of scrutiny to the opinions of the State agency consultants, who also completed a form without further explanation in error." (*Id.*) She also argues that Mr. Sanders "noted clinical findings . . . which are a source of marked distress as Ms. Dawson's signs and symptoms." (*Id.*)

The Court, however, is not persuaded by these arguments. First, Plaintiff's description of the state agency psychologists' opinions as "form[s] without further explanation" is inaccurate. Both state agency psychologists included explanations to support their findings. For example, state agency psychologist C. Warren Thompson, Ph.D., provided a written explanation to support his findings, which includes the following:

> CL report of mental diagnoses is consistent w/evidence in file; however, her report of limitations (endorsing 18/19 areas of limitation) is not consistent w/other evidence in file. Tx notes provide persuasive evidence of ADHD, bipolar, anxiety and PTSD. CL's impairments result in mild to moderate limits. Capable per inference.

(AR 64.) Accordingly, the ALJ found the opinions of the state agency psychologists to be persuasive because they were consistent with the record as a whole and because they referenced the record. (AR 1816–17.) By contrast, Mr. Sanders did not provide a written explanation, even though he was prompted to provide "Comments/finding which support your assessment." (AR 1583.) He chose to leave that question unanswered. Mr. Sanders also did not reference any of Plaintiff's medical records to support his findings, as the ALJ pointed out. Accordingly, the Court finds that the ALJ provided a sufficient explanation of the supportability of Mr. Sanders's opinion. It is clear that the ALJ found that Mr. Sanders did not present relevant objective medical evidence or explanations to support his opinion, which rendered the opinion unpersuasive to the ALJ.

Finally, Plaintiff argues that the ALJ erred "in evaluating the medical evidence of record" because the limitation in her RFC to "simple work instructions" fails to account for her "well documented hallucinations." (Docket No. 9-1 at 15.) Plaintiff points to treatment notes showing that she had hallucinations, had difficulty completing small tasks, and appeared stressed and upset. (*Id.*) However, as set forth above, it is not this Court's job to determine if there is evidence in favor of Plaintiff's position that she is not able to follow "simple work instructions" as set forth in her RFC. *See Garner*, 745 F.2d at 387. In his decision, the ALJ analyzed Plaintiff's reports of hallucinations: "The record shows when the claimant was compliant she reported doing well with stable mood, appetite and sleep and normal mental status exams. She did not usually report hallucinations or panic attacks but did when she was not taking medication and another time was after a medication change." (AR 1813.) This reference indicates that the ALJ properly considered Plaintiff's hallucinations and felt that they were controlled with medication.

In sum, the ALJ logically explained why he found Dr. Sanders's opinion to be neither consistent with the record nor supportable. For these reasons, the Court finds that the ALJ adequately considered the factors of consistency and supportability in evaluating Mr. Sanders's opinion in the context of the record as a whole. The ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of these factors and to determine that the ALJ's evaluation and decision is supported by substantial evidence. Similarly, the ALJ adequately discussed and considered Plaintiff's history of hallucinations when determining Plaintiff's RFC. In short, the ALJ's decision "provide[s] a 'logical bridge' between the evidence and his conclusions" regarding Plaintiff's RFC. *Collier v. Comm'r of Soc. Sec. Admin.*, No. 3:16–cv–02077, 2018 WL 2193965, at *2 (M.D. Tenn. May 14, 2018) (quoting *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). For these reasons, the Court rejects Plaintiff's first assertion of error.

## 2. The ALJ's Consideration of Plaintiff's Disabling Symptoms

Plaintiff also asserts that the ALJ wrongly evaluated her disabling symptoms because he considered certain of Plaintiff's activities to be dispositive of her ability to perform full time work. She points to the ALJ's reference that she "could go to the senior center and play Bingo, could take care of young children at home, and took a flight after passing out on one occasion." (Docket No. 9-1 at 17.)

"An individual's statements as to pain or other symptoms will not alone establish that [he is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted) (cleaned up). Rather, when an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process. SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

14

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important. If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* at *8. On the other hand, if an individual's statements are *inconsistent* with the objective medical evidence, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle"). A credibility assessment is firmly within the ALJ's discretion and not to be decided anew by a reviewing court. *Vaughn v. Berryhill*, No. 3:16–cv–02821, 2018 WL 632377, at *6 (M.D. Tenn. Jan. 11, 2018). It is due "great weight and deference particularly since the ALJ has the opportunity, which we do not, of observing a witness's

demeanor while testifying." *Id.* (quoting *Jones v. Comm'r*, 336 F.3d 469, 476 (6th Cir. 2003)). A reviewing court will not disturb an ALJ's credibility finding "absent compelling reason." *Id.* (quoting *Smith v. Comm'r*, 307 F.3d 377, 379 (6th Cir. 2001)).

The Court finds that the ALJ's determination concerning the consistency of Plaintiff's allegations is supported by substantial evidence. *See Walters*, 127 F.3d at 531 ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). In his decision, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 1813.) Specifically, he found that many of the symptoms about which Plaintiff testified were not evident in or supported by the record. (AR 1814.) He pointed to Plaintiff's testimony that she was impulsive, was too anxious and paranoid to go to the grocery store, was not reliable, and had difficulty getting along with others. He contrasted this with evidence from the record wherein Plaintiff noted that she was reliable, dependable, and easy to get along with; was "going to the senior center because she liked to get out of the house and play Bingo"; and was able to care for young children at home, though it was difficult sometimes and she only received assistance when she had to go to the store. The ALJ also noted that a September 2023 treatment record "noted that [Plaintiff] did not go to the hospital after passing out because she had a plane to catch."

In short, the ALJ's characterization of Plaintiff's activities of daily living was based on more than hearing testimony. The ALJ detailed Plaintiff's hearing testimony and compared that with information included in Plaintiff's medical records, from which he concluded that the medical treatment records "suggest milder symptoms and greater sustained capacity than described in testimony." (AR 31.) The ALJ sufficiently reviewed the "objective medical record evidence" and

16

concluded that Plaintiff's testimony concerning her symptoms and her activities of daily living were not consistent with the record.

Given the sufficiency of the ALJ's consideration of Plaintiff's testimony and the "great weight and deference" that is afforded to an ALJ's credibility assessment, the Court finds that the ALJ's consideration of Plaintiff's disabling symptoms is supported by substantial evidence. For these reasons, the Court rejects Plaintiff's second assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 9) be **DENIED** and the Social Security Administration's decision be **AFFIRMED**.

ANY OBJECTIONS to this Report and Recommendation must be filed within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

**Signed By:**
*J. Gregory Wehrman*
**United States Magistrate Judge**